The State ex rel. Hudson v. Trammel.

THE STATE *ex rel.* HUDSON V. TRAMMEL, *Appellant.*

DIVISION ONE.

1. **Pleading :** MANDAMUS. The denial in the return to an alternative writ of *mandamus* should be positive and direct and not on information and belief, and the same is true of matters of avoidance set up in the answer.

2. —— : ——. Proper objections should, however, be made to such defective pleadings.

3. **County Bonds :** STATUTE : SPECIAL TAX. The act of February 20, 1865 ( Laws, p. 86 ), incorporating the Missouri & Mississippi Railroad Company, provided that it should '' be lawful for the corporate authorities of any city or town, the county court of any county desiring so to do, to subscribe to the capital stock of said company, and may issue bonds therefor and levy a tax to pay the same not to exceed one-twentieth of one per cent. upon the assessed value of the taxable property for each year." *Held,* that the money raised by this special tax constitutes the only fund out of which the bonds or warrants to pay judgments thereon are payable.

4. **County Bonds, Status of :** RES JUDICATA. A judgment in a *mandamus* proceeding of the United States circuit court, directing the county court to issue warrants for such bonds, payable out of the general revenue of the county, must be taken as an adjudication of the status of said bonds by a court of competent jurisdiction, and is not a nullity or reviewable in the state court.

*Appeal from Macon Circuit Court.*—HON. ANDREW ELLISON, Judge.

REVERSED.

*Sears & Guthrie* for appellant.

(1) The undisputed averments of the return showed that the treasurer himself, together with the funds in the treasury, which the relator was seeking to have applied to his warrant, were before the federal

court, which, at the time of relator's petition, had acquired jurisdiction of the officer and his funds. Therefore, the state court acquired no jurisdiction, and appellant's motion to dismiss should have been sustained. *Smith v. McIver*, 9 Wheaton, 532; *Taylor v. Carryl*, 20 Howard, 583; *Freeman v. Howe*, 24 Howard, 450; *Wallace v. McConnell*, 13 Peters, 136; *Riggs v. Johnson Co.*, 6 Wallace, 166; *Mayor v. Lord*, 9 Wallace, 409; *Supervisors v. Durant*, 9 Wallace, 415; *Heidritter v. Oil Cloth Co.*, 112 U. S. 294; *Amy v. Supervisors*, 11 Wallace, 136; *Hagan v. Lucas*, 10 Peters, 400; *Covell. v. Heyman*, 111 U. S. 176; *Patterson v. Stephenson,* 77 Mo. 329; *Metzgar v. Graham*, 57 Mo. 404. (2) "The state and national courts, being independent of each other, neither can impede nor arrest any action the other may take, within the limits of its jurisdiction, for the satisfaction of its judgments and decrees." *Amy v. Supervisors, supra; Beckett v. Sheriff*, 21 Fed. Rep. 321; *Senior v. Pierce*, 31 Fed. Rep. 625. (3) *Mandamus* in the federal courts is held as a species of execution for the enforcement of its judgments. Authorities, *supra; Harshman v. Knox Co.*, 122 U. S. 306; *Knox Co. v. Aspinwall*, 24 Howard, 376. (4) But, should it turn out by any conceivable means that the Macon circuit court acquired jurisdiction, still its decision is erroneous on the merits. Warrants must be paid in the order of their presentation and registration. G. S. 1865, sec. 8, p. 227; 1 Wag. Stat., sec. 8, p. 410. (5) But the United States supreme court has held repeatedly that the self-same warrants set up in appellant's return must be paid in the order of their presentation. *United States v. Clark Co.*, 96 U. S. 211; *United States v. Macon Co.*, 99 U. S. 582, and note following it; *County Court v. U. S. ex rel. Harshman*, 109 U. S. 229. Plaintiff's remedy was in the federal court. *Gumbel v. Pitkin*, 124 U. S. 131; *Krippendorf v. Hyde*, 110 U. S. 276; *Bates v. Days,* 17 Fed. Rep. 897.

*John F. Williams* for respondent.

(1) Warrants issued for any debt incurred by a county, other than those issued on account of the ordinary and usual expenses of the county, shall not be paid until all warrants issued for money due from the county on account of services that are usual and for all expenses necessary to maintain the county organization shall have been fully paid and liquidated. R. S. 1879, secs. 5370-71. (2) The treasurer is bound to pay the ordinary and usual expenses of the county. Any other doctrine would disrupt and disorganize the county government. *State ex rel. v. Macon Co.*, 68 Mo. 29, disapproving *Clark Co. case*, 96 U. S. 211. (3) The Missouri & Mississippi warrant holder can only look to the fund arising from the levy and collection of the one-twentieth of one per cent. for payment. It is so nominated in the bond, and in the charter, and, if that fund is not sufficient to meet all his demands, he has no right to complain. *United States v. Macon Co.*, 99 U. S. 582-591. (4) The federal court disclaims authority to take the common fund and appropriate it to the payment of extraordinary indebtedness. It plainly announces that the common fund of the county is, primarily, for the purpose of paying the ordinary current expenses of the county, and that the bondholder can only reach the surplus, if any, after the current expenses are all paid. *East St. Louis v. Zebly*, 110 U. S. pp. 321-4. (5) The ordinary current expenses of the county must first be paid, and, if that exhausts the whole levy authorized by statute, the holder of an extraordinary debt has no ground for complaint against the county. That is all the county can do, and the bondholders' remedy is exhausted. *Clay Co. v. McAleer*, 115 U. S. 616. (6) The judgment is for the right party, on the return of the appellant. (7) Does the township organization act, Revised Statutes, chapter 162, page 1456, make the townships such distinct and independent municipalities

that their levy is to be construed as over and above the county levy, or only as a part of it? The constitution authorizes the enactment of the township law.

BLACK, J.—This was a petition in the circuit court for a *mandamus* against the defendant Trammel, who is treasurer of Macon county, to compel him to pay a warrant for $10 held by Hudson, the relator. Trammel appealed from a judgment awarding a peremptory writ. This proceeding was commenced in April, 1886, and determined in May of same year.

It is admitted that the relator presented his warrant for payment to the respondent treasurer, in April, 1886, which payment was refused, and that it was properly drawn upon the "contingent fund." There was then sufficient funds in the treasury to the credit of that fund to pay the warrant.

It is alleged in the return made by the treasurer to the alternative writ, that the contingent fund is a part of the ordinary revenue of the county, arising from the levy of thirty cents on the $100 valuation, the other twenty of the fifty cents allowed by law belonging to the townships, the county being under township organization; that on the twenty-ninth of April, 1884, there was registered against "the said ordinary and general funds and revenues" fifteen other warrants to pay judgments rendered against Macon county by the circuit court of the United States, "which said warrants were issued as respondent believes and is informed by the county court of Macon county in obedience to peremptory writs of *mandamus* issued from said circuit court of the United States." The names of the payees and the amounts of their warrants are set out, aggregating about $183,000, with the averment that they remain unpaid and exceed in amount all the moneys and funds in the treasury.

For further return it is alleged that five of the said judgment warrant holders, whose warrants amount to

some $60,000, obtained alternative writs of *mandamus* from the United States circuit court, directing the justices of the county court and the then treasurer to issue the warrants "on the general fund," and commanding the treasurer to register and pay the same in the order of registration "out of the general funds and revenues" then in and thereafter to come into the treasury; that the five warrants were issued and registered pursuant to such command; that the treasurer made return to each of said alternative writs, and issues were made up, the chief of which was whether the relators in said writs were entitled to have the money then raised and thereafter to be raised from the levy of thirty cents on the $100 valuation applied to the payment of their warrants in priority to and exclusion of warrants issued for ordinary county expenses; that the respondent in this case became a party respondent to those proceedings upon his accession to office.

For a further return it is averred that another of said judgment warrants for $35,667 was issued to one Huidekoper in obedience to a peremptory writ of *mandamus* from the United States circuit court; that said court in that proceeding and in November, 1885, ordered the county treasurer to return an account of moneys collected and arising from the levy of fifty cents on the $100 valuation since the registration of that warrant up to and including the thirty-first day of December, 1885; that the treasurer made return and thereupon the relator in that case made the claim that the whole of the money collected and reported should be applied to the payment of his warrant; that the issues thus made remain undecided.

There is the further general averment that all of the foregoing *mandamus* proceedings are still pending in the United States circuit court.

The relator in his reply admits that the judgment warrants set up in the return were issued and registered as therein alleged, "but says they were issued to pay an

indebtedness of said county other than the usual, ordinary and necessary running expenses of said Macon county, to-wit, to pay judgments rendered on bonds and coupons subscribed by said county to the Missouri & Mississippi railroad, and are only entitled to have paid on them any surplus remaining in the treasury after the ordinary expenses of the county are first paid."

The evidence produced, it is conceded, shows that there was at the date of this trial some $17,000 in the county treasury; that $3,000 of that amount had reached the treasury since the last return made to the *mandamus* proceedings in the United States circuit court, that $2,200 of the $17,000 had been set apart to the contingent fund, and that $300 of the contingent fund had been collected since the said last return in said proceedings.

I.   We have now, as we had on the former hearing of this case, much difficulty in understanding the facts involved in this contest.  Some of the averments of the return are made on information and belief.  A denial on information and belief in a return to an alternative writ of *mandamus* is not sufficient.  The denial must be direct and positive.  *State ex rel. v. Williams,* 96 Mo. 18.  So where matter in avoidance is set up in the return the averments should also be direct and positive and not on information and belief.  But as no objection was made to this form of pleading, and as the reply seems to confess the matters thus alleged, they must be taken as admitted facts.  Again the return is very indefinite as to many important matters, and it may be that we do not yet understand the real facts.

II.   The relator presented his warrant for payment on April 20, 1886.  At that time there was sufficient money to the credit of the contingent fund to pay his warrant and all previous warrants registered against that specific fund.  The relator is, therefore, entitled to the relief which he asks, unless it was the duty of the

treasurer to apply the money to the credit of that fund to the payment of these bond warrants which were registered at a prior date, namely, on the twenty-ninth of April, 1884. The primary question, therefore, is out of what fund are these judgment bond warrants of right payable?

While it appears the bonds were issued to the Missouri & Mississippi Railroad Company, it does not appear when or under what law they were issued. It seems to be assumed on both sides, and we take the fact to be that they were issued in February, 1870, by authority of the thirteenth section of the act of February 20, 1865, incorporating the said railroad company, which section is in these words:

"It shall be lawful for the corporate authorities of any city, or town the county court of any county, desiring so to do, to subscribe to the capital stock of said company, and may issue bonds therefor, and levy a tax to pay the same not to exceed one-twentieth of one per cent. upon the assessed value of taxable property for each year."

While this section gives the county court power to subscribe to the stock of this particular railroad company and to issue bonds in payment thereof, it also provides how the bonds may be paid, namely by the levy of a tax not to exceed in each year the designated amount. This court has held that the money raised by this special tax constitutes the fund and the only fund out of which these bonds or warrants issued to pay judgments rendered thereon are of right payable. *State ex rel. v. Shortridge*, 56 Mo. 126; *State ex rel. v. Macon County Court*, 68 Mo. 29. As we understand this record the special tax has been regularly levied and collected and applied in payment of the bonds and judgments.

On the other hand the supreme court of the United States by a largely divided opinion, with the *Shortridge case* before it, held that these bond judgment warrants were entitled to be paid out of the general funds of the

county, so far as the special tax of one-twentieth of one per cent. was insufficient to pay them. *United States v. Clark Co.*, 96 U. S. 211. The ruling in that case goes upon the broad ground that the section of the railroad charter before quoted constituted no limitation whatever upon the taxing power of the county, but rather furnished an additional security for the payment of the bonds, and that, therefore, the bonds constituted debts payable out of funds raised to defray ordinary county expenses. That ruling has been adhered to by a majority of that court. *Macon Co. v. Huidekoper*, 99 U. S. 592; *Knox Co. Court v. United States*, 109 U. S. 229.

If this question, whether these bonds and warrants issued in payment of them, were a federal question we should of course follow the rulings of the supreme court of the United States; but the question is simply one as to the meaning of a statute of this state, and that is a question which this court must decide for itself. At the time the special act was passed the general law gave counties the right to subscribe to the stock of railroad companies, whether incorporated under the general law or some special act. But the general law required the assent of two-thirds of the qualified voters. It also made it the duty of the county court to levy a special tax to pay the subscription, or the bonds issued in payment thereof. G. S. 1865, secs. 17–21, p. 338. The tax for ordinary county purposes was wholly inadequate to meet obligations incurred for subscriptions to railroad stock. Hence, this method of meeting such obligations by a special levy.

The promoters of this railroad company were not satisfied with the general law authorizing counties to subscribe for stock, and they procured this special charter provision which gave county courts the right to subscribe for stock without any assent on the part of the taxpayers. But the same section which confers such power upon the county courts makes its own provision in respect to payment of the subscription.

The legislature, having granted the power, saw fit to place a limit upon the amount of taxes to be levied, and this it had a right to do. The charter was accepted with this limitation, and the limitation entered into and constituted a part of the contract evidenced by the bonds. Said section 13 makes it lawful for any county court "to subscribe to the capital stock of said company, and may issue bonds therefor and levy a tax to pay the same not to exceed one-twentieth of one per cent.," etc. Without this section the county court could not have created the debt. The same expression which gives the power and authorizes the court to issue bonds provides for a special tax to pay them and places a limitation upon the amount of tax to be annually levied for that purpose. In our opinion this section, even taken by itself, provides for the fund, and only fund, from which the bonds were to be paid. This conclusion is strengthened when we consider the fact that such bonds issued under the general law were paid, not out of the general revenues levied to pay current county expenses, but by means of a special levy for the particular purpose. The fact, if such it be, that this special tax is inadequate to pay the bonds actually issued by the county does not, in our opinion, argue against the construction given by us to the special charter. It is not to be assumed that the legislature ever supposed the power granted would be so used. We are to construe the law from the standpoint of the legislature when it was enacted, and not by the guide of what was done under it. It is, however, useless to protract this discussion. It is sufficient to say, in conclusion, that we adhere to the former rulings of this court.

III. There remains to be considered another and very different question, and that is, what effect is to be given to the judgments of the circuit court of the United States awarding these writs of *mandamus* commanding the county court to issue the warrant payable out of the general funds and revenues of the county.

From the undenied averments of the return it appears that the fifteen bond warrants were issued in obedience to peremptory writs. It is not alleged that all of these warrants were registered because of, or in compliance with, such writs; but it is alleged that they were registered on the twenty-ninth of April, 1884. A subsequent undenied averment is that five of the fifteen warrants were issued and registered pursuant to alternative writs of *mandamus*. There is a seeming inconsistency in these statements. It does, however, appear that enough of the warrants were issued in obedience to peremptory writs to consume all the money in the treasury, whether in the contingent or other funds, at the time the plaintiff presented his warrant for payment, which was drawn on the contingent fund. It is unnecessary to speak further of the contests still going on in the *mandamus* proceedings; for it must be taken that all but the five warrants were issued pursuant to final judgments. It must be conceded, too, that, if these warrants are payable out of the general revenues, they are payable out of the contingent fund.

The judgments awarding these peremptory writs of *mandamus* were doubtless rendered pursuant to the opinions of the supreme court of the United States in the cases before noted. Those cases hold that the bonds and judgments rendered thereon, as to any deficiency after the application of the money raised by the special levy of one-twentieth of one per cent., constitute ordinary debts of the county and are payable out of the general revenues of the county. Hence, the warrants were ordered to be and were issued against the "said ordinary and general funds and revenues." These judgments, therefore, amount to an adjudication that the warrants are chargeable on the general funds. The circuit court of the United States had jurisdiction over the parties and the subject-matter of those proceedings. The judgments are not reviewable by this court, nor can they be assailed in this collateral proceeding. They

are, as to the particular warrants, binding upon the parties thereto; for a judgment in *mandamus* is as conclusive as a judgment in any other suit. *Louis v. Brown Township*, 109 U. S. 162; *Santa Cruz Gap Co. v. County*, 62 Cal. 40.

It is true that the present relator was not a party to those proceedings, but the judgment established the status of the warrants and made them charges against the general revenues. Being registered, they have priority according to the date of their registration. This was the manifest object had in view in ordering them to be issued. Whether these judgments are right or wrong, is a question not open to our consideration as respects these warrants issued pursuant thereto.

The statute enacted in 1879 makes it the duty of the county court to divide the general revenues into five parts, commonly called the poor-house fund, the road and bridge fund, the salary fund, the jury and election fund, and the contingent fund, and each fund is declared to be a sacred fund for the designated purpose, and can only be drawn from the treasury by warrants issued on the particular fund. R. S. 1879, secs. 6818–6820. We do not know when the warrants in question were issued; but as they were registered April 29, 1884, it is assumed that they were issued about that date, which was long after the law just mentioned was enacted. The warrants appear to have been issued in disregard of this law. We suppose they were issued so as to cover all of the general revenues on the theory that the bond creditors were entitled to resort to the funds opened to them at the date of their bonds. Even at that date the road fund and the poor-house fund were raised by a special tax levied for the particular purposes ( Wag. Stat., sec. 154, p. 1224, and secs. 8, 12, p. 998), and could not have been invaded by these bond warrants.

But all this brings us back to the proposition that these bonds and the judgments thereon have been adjudged by a court of competent jurisdiction to be

ordinary county debts and payable out of the general revenue funds. Wrong as these adjudications are in our firm conviction, they fix the status of these particular warrants, and, as before stated, it is not within our province to review the judgments, nor can we treat them as nullities. The judgment in this case must, therefore, be and it is reversed. SHERWOOD, P. J., dissents. The other judges concur.