## MAGNER, Appellant, v. CITY OF ST. LOUIS.

### Division One, February 10, 1904.

1. **Officer: REMOVAL: LACK OF FUNDS.** If a public officer has been unlawfully removed and is otherwise entitled to recover his salary for the unexpired part of his term, the fact that there had not been enough money appropriated to pay him will not defeat his claim.

2. ——: ——: **REPEAL OF ORDINANCE.** Where an officer derives title to an office solely from a certain ordinance, a repeal of that ordinance before the term for which he was appointed has expired, abolishes the office, puts an end to his official existence, and cuts off his right to the salary for the unexpired part of the term. And the power to enact an ordinance is the power to repeal.

3. ———: ———: ———: SHORTENING TERM.  Where the city re-
pealed an ordinance which had fixed the tenure of an inspector
of buildings at four years and enacted a new ordinance in lieu
thereof, which gave him no definite term, he can be removed
before the expiration of the four-year term for which he had
been appointed.

4. ———: ———: INSPECTOR OF BUILDINGS.  An Inspector of Pub-
lic Buildings, under the charter and ordinances of St. Louis, is
a mere assistant to the Commissioner of Public Buildings.  He
does not belong to that class of "city officers" which the char-
ter does not permit to be removed except upon charges, speci-
fications and a hearing.  He can be removed by the Commis-
sioner at pleasure, without assigning any cause.

Appeal from St. Louis City Circuit Court.—*Hon. Jno.
A. Talty*, Judge.

AFFIRMED.

*Leverett Bell* for appellant.

(1)  An officer of St. Louis can be removed from
office only for cause on a trial with notice and an oppor-
tunity to be heard and defend, and one having an an-
nual salary or a definite term of service is an officer of
the city of St. Louis, and it makes no difference whether
the office is created by the charter or by an ordinance.
St. Louis v. Laughlin, 49 Mo. 559; Ex parte Neet, 157
Mo. 527; State v. St. Louis, 90 Mo. 19; State v. Brown,
57 Mo. App. 199.  (2)  An officer of St. Louis who is
unlawfully removed and excluded from his office by
superior force or authority can recover the salary of the
office as the same falls due in an action against the city
where the office remains vacant.  Fitzsimmons v. Brook-
lyn, 102 N. Y. 536; Howard v. St. Louis, 88 Mo. 656;
State v. Walbridge, 153 Mo. 194; Bates v. St. Louis,
Id. 18.

*Chas. W. Bates* and *Benj. H. Charles* for respond-
ent.

(1)  The Municipal Assembly, the creator of the
office of inspector, could change the term or tenure

thereof, or abolish the office altogether at any time that it might see fit. Charter, art 3, sec. 32 (Munic. Code, p. 325); State ex rel. v. Longfellow, 95 Mo. App. 666; State ex rel. v. Longfellow, 95 Mo. App. 668; Primm v. Carondelet, 23 Mo. 25. Whatever plaintiff's status may have been under section one of ordinance 18964, which provided for a term of four years, that status was changed by ordinance 19908 of December 23, 1899, repealing section one of ordinance 18964: First, because the provision for such definite term is now omitted; and, secondly, the salary under the former ordinance having been at the rate of $1,200 per annum, now becomes $100 per month, payable monthly. State ex rel. v. Longfellow, 95 Mo. App. 667; State ex rel. v. Longfellow, 95 Mo. App. 668. (2) Any municipal officer or employee who holds neither for a definite term nor during good behavior, may be removed at any time by the appointing power, there being no positive provision to the contrary. (3) Plaintiff was only an assistant to the commissioner of public buildings. State ex rel. v. Longfellow, 95 Mo. App. 668, following State ex rel. v. Longfellow, 93 Mo. App. 364, and State ex rel. v. Longfellow, 95 Mo. App. 660.

VALLIANT, J.—Plaintiff sues to recover a sum which he claims was due him for salary as inspector in the department of Public Buildings in the city of St. Louis, from which position he avers he was unlawfully excluded.

His appointment was in writing, as follows:

St. Louis, October 30, 1899.

Hon. Henry Ziegenhein, Mayor, St. Louis.

Dear Sir: I have the honor to submit herewith for your approval the following appointment in accordance with the provisions of Ordinance No. 18,964, John Magner for inspector in the Department of Public Buildings.     Respectfully,

C. F. Longfellow,
Commissioner of Public Buildings.

Approved: Henry Ziegenhein, Mayor.

The order for his removal was also in writing as follows:

October 31, 1900.

Mr. John Magner, City.

DEAR SIR: You are hereby notified that your services as inspector of buildings will not be required by the city of St. Louis after October 31, 1900, and the undersigned being of the opinion that the interests of the city require it, does hereby, under the provisions of section 12 of the municipal code of St. Louis, remove you from your said employment and duties of inspector, said removal to take effect at the time aforesaid.

Respectfully,

L. C. F. STEMME,

Deputy Commissioner Public Buildings.

Approved:  ROBERT E. McMATH, President.

The plaintiff's proposition is that he was a city officer and subject to be removed only on charge and specifications, trial and conviction.

The following are the provisions of the city charter which are referred to by the counsel on either side as bearing on the plaintiff's proposition:

Sec. 5, art. 4: "Any elected city officer may be suspended by the mayor and removed by the counsel for cause; and any appointed officer may be removed by the mayor or council for cause. In either case the mayor shall temporarily fill the vacancy, except as hereinafter provided."

Sec. 43, art. 4, after requiring all city officers before entering on their duties to take the oath of office and give the bond therein specified, declares: "The term 'officers,' whenever used in this charter, shall include all persons holding any situation under the city government or its departments, with an annual salary or for a definite term of office."

Sec. 14, art. 4: "The assistants of any officer shall hold their position during good behavior, unless otherwise provided by ordinance, but may be removed for cause by the mayor, or by the officer under whom they work, at his pleasure."

Sec. 45, art. 4: "The assembly shall have power, by ordinance passed by a vote of two-thirds of the mem-

bers elect of each house, to create any other office which it may deem necessary, and to provide for the manner of filling the same.''

Sec. 28, art. 4: ''The Municipal Assembly shall, by ordinance, define the duties of all city officers, and may change, increase or diminish them in a manner not inconsistent with this charter.''

Sec. 26, art. 3, confers on the mayor and Assembly power, by ordinance not inconsistent with the Constitution and laws of the State or of the charter, ''to regulate and provide for the election or appointment of city officers required by this charter, or authorized by ordinance, and provide for their suspension or removal; and they shall establish the salaries of all officers and the compensation of all employees, excepting day laborers and jurors and witnesses, respectively, for their services: *Provided,* That the salary of no officer shall be changed during the term for which he is elected or appointed, and that no officer receiving a salary shall receive any fees or other compensation for his services.''

Sec. 32, art. 3, confers on the Assembly the power to transfer in whole or in part the duties appertaining to any office to another office.

The following are the provisions of the city ordinances that bear on the case:

The office of Commissioner of Public Buildings was created by ordinance 10371, approved September 23, 1877. By that ordinance the Commissioner is denominated an officer, to receive a salary of $1,800 a year, and to hold his office for a term of four years. His duties as therein specified relate only to the public buildings of the city. The only appointments he is authorized by the ordinance to make are of janitors, watchmen, engineers and firemen. Section 7 of that ordinance is as follows: ''All appointments of janitors, engineers, or other persons by the Commissioner of Public Buildings shall be subjected to the approval of the President of the Board of Public Improvements, and

may be removed by the Mayor for cause, or by the Commissioner and President of the Board of Public Improvements whenever the interests of the city require it.'' That is now section 12 of the Municipal Code.

In 1892, the duties which theretofore under section 5, article 9, of the charter had devolved on the Chief of the Fire Department ''to inspect all buildings in the course of construction and to cause to be carried into effect all ordinances relating thereto'' were transferred to the Commissioner of Public Buildings by Ordinance 17188, and by the ordinance authority to appoint inspectors was conferred on the Commissioner:

''There shall be five inspectors of buildings appointed by the commissioner of public buildings, to be approved by the Mayor, who shall be practical builders, and whose salaries shall be payable in monthly installments, at the rate of twelve hundred dollars per annum each. Said inspectors shall give bond to the city of St. Louis for the faithful performance of their duties, in the sum of five thousand dollars each, with two good and sufficient sureties to be approved by the Mayor and Council. The first appointments of inspectors of buildings shall be for the term ending on the first Tuesday in April, eighteen hundred and ninety-five, and thence forward the appointments shall be made for the term of four years.''

That clause was literally re-enacted as part of ordinance 18964 in 1897, except that the number of inspectors was increased to six.

By ordinance 19908, approved December 23, 1899 (plaintiff's appointment was October 30, 1899), the section of ordinance 18964 containing the clause just quoted was repealed and a new section enacted in lieu thereof which, as to the subject of that clause, is as follows:

''There shall be six inspectors of buildings appointed by the Commissioner of Public Buildings, to be approved by the Mayor, who shall be practical build-

ers, and whose salaries shall be one hundred dollars per month each, payable monthly. Said inspectors shall give bond to the city of St. Louis for the faithful performance of their duties in the sum of five thousand dollars each, with two good and sufficient sureties, to be approved by the Mayor and Council. The first appointments of inspectors of buildings shall be for the term ending on the first Tuesday in April, eighteen hundred and ninety-five.''

By Ordinance 19991, approved April 3, 1900, the position of Deputy Commissioner of Public Buildings was created, who was authorized to perform the duties of the commissioner in his absence.

The plaintiff's evidence tended to show that the sum of $13,000 had been appropriated by the Municipal Assembly for the support of the Department of Public Buildings for the fiscal year ending April 8, 1901, and that on November 1, 1900, there remained unexpended of that sum $5,091.69; on February 1, 1901, $2,216.70, and on March 1, 1901, $958.37.

The judgment was for the defendant, and the plaintiff appeals.

The evidence as to the money in the treasury appropriated to the use of the department was doubtless introduced by the plaintiff to show that his removal was not made necessary for lack of money to pay his salary. Judging from the ratio of diminution of the fund from November 1st to March 1st it would seem that if the plaintiff had been retained on the pay roll the appropriation would not have defrayed the expenses of the department for the time specified. But we do not deem that as very important, because if the plaintiff is otherwise entitled to recover in this suit, the fact that there was not enough money appropriated to pay him will not defeat his claim.

The form of the letter of removal signed by the Deputy Commissioner and approved by the President of the Board of Public Improvements shows that they

thought that their power to remove was to be found in section 7 of Ordinance 10371, now section 12 of the Municipal Code, above quoted. But in that they were mistaken. That section is a part of the original ordinance creating the office of Commissioner of Public Buildings and defining his duties, and as we have seen, the duties there defined relate only to the care of the public buildings of the city. The appointments he was then authorized to make were of janitors, watchmen, engineers and firemen. The authority there given to remove had reference only to those employees the commissioner was by the ordinance authorized to appoint. That ordinance was passed in 1877. It was not until 1892, when Ordinance 17188 was passed transferring from the Chief of the Fire Department to the Commissioner of Public Buildings the duty of inspecting private buildings in the course of construction, and enforcing ordinances relating thereto, that the power was given to the commissioner to appoint inspectors to aid him in the performance of his new duties.

The authority to remove "janitors, engineers or other persons" given in section 7 of Ordinance 10371 (now section 12, Municipal Code) has no application to this case.

Plaintiff refers to section 5, article 4, of the charter, in reference to the removal of city officers, and contends that by its terms as construed by this court in State ex rel. v. St. Louis, 90 Mo. 19, an officer of the city, whether elected or appointed, can be removed only for cause, which means on conviction after due trial on charges and specifications. Conceding for the argument that that is the proper construction of that section, the question arises, is an inspector of buildings an officer of the city within the meaning of that section?

Reading the section in immediate connection with the other sections with which it is grouped it seems to relate, in its primary application at least, to the officers of the city government called for by the charter, each

one of whom is named in the article.    These were the officers in the minds of the framers of the charter when they were writing that article; if those provisions now cover the plaintiff's position it is because they have been extended by ordinance to meet such a case.

There is nothing in the nature of the duties which the inspector of buildings had to perform that would distinguish his position from that of a mere employee. The ordinance which authorized his appointment prescribed no duties to be performed, and it leaves the inference that he was appointed merely to assist the commissioner in the performance of the new duties therein laid upon him, that he was a mere assistant to the Commissioner.

But according to the plaintiff's argument the nature of the duties he was to perform is of no consequence in determining whether or not he was a city officer, because section 43, article 4, defines the term officers as used in the charter to include "all persons holding any situation under the city government or its departments, with an annual salary or for a definite term."    And in that connection the plaintiff refers to section 1, of ordinance 18964, above quoted, which was in force when he was appointed and which prescribed a salary of $1,200 a year and a term of four years for the inspectors.

The plaintiff's title to the position he held was derived from that ordinance; he claims no higher source.    The power to enact an ordinance is the power to repeal it.    The Commissioner himself could not hold his position if the Assembly should repeal the ordinance under which the office exists.    Even though appointed for a definite term, if the ordinance should be repealed his official existence would be at an end.    That is the category into which the plaintiff's case falls.    The section of the ordinance under which he was appointed which prescribed his salary at $1,200 a year and his term of four years was repealed shortly after he entered

into his place and in lieu thereof another section was adopted which gave an inspector of buildings a monthly salary only and no definite term. After the repeal of section 1 of Ordinance 18964 the plaintiff had no continuing right to the position which he had obtained under that section, and if he had any right to be an inspector at all it was under and by virtue of the ordinance that was adopted in place of the repealed one. No one questions the authority of the Assembly to repeal an ordinance creating an office, or that the effect of the repeal is to abolish the office.

At the time the plaintiff was removed there was neither an annual salary nor a definite term fixed to his position, the position was therefore not converted into an office by force of section 43, article 4.

We can see nothing in the so-called office of Inspector of Public Buildings to distinguish the incumbent from a mere assistant to the Commissioner. The charter expressly recognizes assistants to public officers; it does not recognize them as officers, holding place by independent title, but does recognize the fact that to render the service efficient, the officer who is responsible for the work of his office should have the right to appoint and dismiss his assistants at pleasure.

Sec. 14, art 4, is as follows: "The assistants of any officer shall hold their position during good behavior, unless otherwise provided by ordinance, but may be removed for cause by the mayor, or by the officer under whom they work, at his pleasure."

Under that charter provision the Commissioner had authority to remove the plaintiff from this position of inspector, without assigning any cause and without consulting any other officer. We, therefore, hold that the plaintiff was lawfully dismissed from his position, and that he is not entitled to recover.

These questions have all been decided by our St. Louis Court of Appeals and the law clearly laid down in opinions by Judge BLAND and Judge BARCLAY. [State

ex rel. Knittel v. Longfellow, 93 Mo. App. 364; State
ex rel. Bartraw v. Longfellow, 95 Mo. App. 660; State
ex rel. Magner v. Longfellow, 95 Mo. App. 668.]    The
last case cited was that of this plaintiff seeking a man-
damus against the Commissioner of Public Buildings
to pay the claim now in suit.

The trial court held a correct view of the case. The
judgment is affirmed. *Brace, P. J.*, and *Robinson, J.*,
concur; *Marshall, J.*, concurs in the result.