STATE OF MISSOURI, AT THE RELATION OF MARCUS D. STRAIT, RESPONDENT, v. ROBERT B. BROOKS, DIRECTOR OF STREETS AND SEWERS; HENRY W. KEIL, MAYOR; LOUIS NOLTE, COMPTROLLER; WM. G. BUECHNER, TREASURER; CHARLES HERTENSTEIN, T. H. LOVELACE AND F. A. RENICK, MEMBERS OF THE EFFICIENCY BOARD, APPELLANTS.[*]

St. Louis Court of Appeals. Opinion filed March 3, 1927.

**1.—Mandamus—Pleading—Return—Sufficiency.** Affirmative allegations in the return to a writ of mandamus **held** sufficient to cure any fault in the return because of the failure to make a specific denial.

**2.—Same—Same—Same—Failure to Make Specific Denial—Objections Not Timely—Appellate Practice.** Where relator in a mandamus proceeding, proceeded upon the theory that all the allegations of the writ had been traversed, the question being raised for the first time, on appeal, the appellate court will not hold the return insufficient.

**3.—Municipal Corporations—City of St. Louis—Charter—Ordinances—Discharge of Street Department Clerk.** The charter of the city of St. Louis effective in 1914 and ordinances thereunder **held** not to prevent the superintendent, under which relator worked for the city as grade clerk II (CC II)

in the street department, from discharging him with or without cause except for religious or political affiliations, although such clerk was an employee under the old charter, the new charter and ordinances thereunder apply exactly to him as to anyone else appointed since the new city government became effective.

**4.—Same—Same—Same—Same—Street Department Clerk—Legislated Out of Position—Effective.** A clerk, grade II (CC II) in the street department of the city of St. Louis **held** legislated out of his position and not discharged, and in view of the charter and the new ordinance abolishing the employment of relator, such employment ceased at the time the new ordinance took effect, and he had no further rights to compel reinstatement or right to salary and the fact that another man was placed in his position, or that the abolition of the position was for the sole purpose of making room for some one else does not vitiate the action of the city in passing the new or reorganization ordinance.

**5.—Same—City of St. Louis—Charter—Employees—Vested Right in Employment.** An employee of a municipal corporation has no vested right in his employment and the municipality may abolish it altogether or change the duties, term or tenure of it without violating any right of the employee, if it does not contravene the organic law, or, as under the St. Louis charter powers, also does not contravene the State Constitution or statute law.

**6.—Same—Same—Ordinances—Creating Office or Position—Repeal—Effect.** The repeal of an ordinance creating an office or position abrogates it absolutely, unless perpetuated by some other provision.

**7.—Evidence—City of St. Louis—Charter—Judicial Notice.** The appellate court must take judicial notice of the charter of the city of St. Louis, which is the organic law of the city, under the State Constitution, article 9, section 21.

**8.—Municipal Corporations—Ordinances—Abolishing Office—Motive of Alderman.** The motive or intent of the board of aldermen in passing an ordinance abolishing an office or employment cannot be inquired into by the courts if the ordinance was authorized by the charter, and the aldermen acted within their limits of discretion under the law.

**9.—Mandamus—Right to Municipal Office—Two Claimants—Cannot Be Determined By Mandamus.** The right to municipal office or employment as between two claimants cannot be determined by mandamus.

**10—Municipal Corporations—City of St. Louis—Charter—Ordinances—Powers—Right to Reorganize Street Department as to Employees.** Under the charter of the city of St. Louis **held** it was within the power of the city to reorganize the street department employees and their duties.

---

\*Corpus Juris-Cyc References: Appeal and Error, 3CJ, p. 788, n. 87; Evidence, 23CJ, p. 91, n. 47; Mandamus, 38CJ, p. 705, n. 34; p. 887, n. 99; p. 945, n. 28; Municipal Corporations, 28Cyc, p. 389, n. 11; p. 401, n. 38; p. 436, n. 9; p. 482, n. 98; p. 485, n. 34.

Appeal from the Circuit Court of the City of St. Louis.—Hon. Victor H. Falkenhainer, Judge.

REVERSED.

*Julius T. Muench*, City Counselor, and *Oliver Senti*, First Associate City Counselor, for appellants.

(1)   (a)   In the absence of charter or ordinance provisions for the reinstatement of a discharged municipal employee, the right of mandamus does not lie to restore such employee to a position from which he was either rightfully or wrongfully discharged.   State ex rel. K. C. v. Coon, J., etc.,— S. W. —.   (b)   The writ of mandamus does not lie unless the relator is clearly entitled to all of the relief sought.   State ex rel. Hughlett v. Finley, 77 Mo. App. 213.   (c) Where the writ grants more relief than the relator is entitled to, it is a nullity.   State ex rel. v. K. C., St. J. & C. B. & Q. R., 77 Mo. 143; School District No. 11 v. Lauderbaugh, 77 Mo. 190.   (2)   The right to a municipal office or employment as between two claimants cannot be determined by mandamus.   St. Louis County v. Sparks, 10 Mo. 117.   (3)   The peremptory writ shows on its face that the substantial rights of a third party (Utah Ford) are affected, and said writ therefore should not have issued.   State ex rel. McKinnon v. Wolfe, 58 Fla. 523; Rankin v. Noel, 185 S. W. 883; U. S. ex rel. v. Edmunds, 5 Wall, 663, 18 L. Ed. 692.   (4)   The peremptory writ must conform strictly to the alternative mandamus, and is limited as to form by the terms of the alternative writ, and the courts are without power to award the peremptory writ of mandamus in any other form than that affixed by the alternative writ.   State ex rel. Millet v. Field, 37 Mo. App. 83; State ex rel. v. Trustees of the Town of Pacific, 61 Mo. 158; State ex rel. v. K. C., St. J. & C. B. R. R., 77 Mo. 143; Ferris on Extraordinary Remedies, page 290; High on Extraordinary Remedies, sec. 548.; State ex rel. v. Holliday, 65 Mo. 76; Tapping on Mandamus, 327; Moses on Mandamus, 207; 38 Corpus Juris 932.   (5)   (a).   An employee of a municipal corporation has no vested right in his employment.   The municipality may abolish it altogether, or change the duties, term or tenure of it without violating any right of the employee.   Primm v. Carondelet, 23 Mo. 22; Magner v. St. Louis, 179 Mo. 495; State ex rel. v. Davis, 44 Mo. 129; Wilcox v. Rodman, 46 Mo. 322; Gregory v. Kansas City, 244 Mo. 523; State ex rel. v. Herman, 11 Mo. App. 118; Butler v. Pennsylvania, 10 Howard (U. S.) 402, 13 L. Ed. 472.   (b)   The repeal of an ordinance creating an office or position abrogates it *ipso facto*, unless perpetuated by some other provision.   Gregory v. K. C., 244 Mo. 523;. Bennett v. Longview, 268 S. W. 786.   (6)   (a)   The charter of the city of St. Louis does not confer on the relator (because he was an employee at the time of its adoption) the right to maintain his position as clerk grade 2 (CC II) until discharged for cause. (b)   Persons in the employ of the city at the time of the adoption of its present charter are only entitled to retain their positions until

discharged, reduced, promoted or transferred in accordance with the provisions of the charter. (c) The tenure of employment of a person who was in the employ of the city at the time of the adoption of its present charter and who remained thereafter pursuant to the provisions of section 9 of article 18 is subject to the charter and ordinances of the city. Section 15 of the Schedule of the Charter. (d) The charter of the city of St. Louis is its organic law and the courts will take judicial notice of its provisions. Constitution of Missouri, article 9, section 21; St. Louis v. Lange, 131 Mo. 412, 420. (7) (a) Prior to June 16, 1924, a clerk grade 2, (CC II) in both the maintenance and cleaning section and in the permit section of the department of streets and sewers was provided for by ordinance. (Ordinance 30191, Sections 21 and 22. (b) Ordinance 30191 was repealed by Ordinance 33151, effective June 16, 1924, and no provision was made in the latter ordinance for a grade II clerk, in either the maintenance or cleaning section or the permit section of the department of streets and sewers. (8) The motives and intents of a council in passing an ordinance abolishing an office cannot be inquired into by the courts, and where the action of the city council was authorized by law and the council acts within the limits of the discretion conferred upon it by such law, courts will not review its proceedings. Downey v. State, 160 Ind. 578, 73 N. E. 578; Shepard v. Seattle, 59 Wash. 363, 40 L. R. A. (N. S.) 647, 109 Pac. 1067; Voris v. Seattle, 74 Wash. 199, 4 A. L. R. 187.

*Benj. J. Klene* for respondent.

(1) (a) "Mandamus is the proper remedy to restore one to a position from which he has been unlawfully excluded." State ex rel. v. Walbridge, 153 Mo. 194; State ex rel. v. Kansas City, 206 App. 17; State ex rel. v. Miles, 210 Mo. 127; State ex rel. v. Kansas City, 263 S. W. 516; State ex rel. v. Kansas City, 303 Mo. 74. (b) "It is a doctrine well recognized that one rightfully in an office or position, performing the duties and entitled to the salary thereof, but who has been wrongfully deprived of his place by the illegal appointment of another, may have his remedy in mandamus to secure reinstatement." Spelling on Injunction (2 Ed.), sec. 1576; State ex rel. v. Miles, 210 Mo. 127; State ex rel. v. Kansas City, 303 Mo. 74; Mandamus, 38 C. J., sec. 295, p. 710. (c) "And for payment of salary of which he has been thus deprived." State ex rel. v. Walbridge, 153 Mo. 204; State ex rel. v. Brodie, 177 Mo. App. 382; State ex rel. v. Kansas City, 206 Mo. App. 17; State ex rel. v. Rawlings, 250 S. W. 927; State ex rel. v. Kansas City, 303 Mo. 74. (d) "Regardless of the fact that the place has been filled before suit is brought, mandamus is the proper remedy where a person has been unlawfully re-

moved." Mandamus, C. J., sec. 300, p. 713; State ex rel. v. Wal-
bridge, 153 Mo. 204; State ex rel. v. Kansas City, 206 Mo. App. 17.
(2) Relator "was not removed as that term is understood in the
law. What was done was not legally done, and, therefore, had no
legal effect. Another was assigned to his duties and that other was
paid by the city. That was the city's affair, if it chose to take such
course, with its attending consequences." Gracey v. St. Louis, 213
Mo. 397; State ex rel. v. Kansas City, 303 Mo. 75. (3) "The legal
right to the office carried with it the right to the salary. The board.
by its wrongful act, could not deprive him of his legal right." State
ex rel. v. Walbridge, 153 Mo. 203; State ex rel. v. Kansas City, 303
Mo. 74-5. (4) (a) "Matters well pleaded by relator in mandamus
and not denied by respondents in express terms are admitted to be
true." State ex rel. v. Adams, 161 Mo. 349. (b) "A general denial
in the return to the alternative writ of mandamus may be disregarded
as not a sufficient traverse of the allegation of the writ." State ex
rel. v. Broddus, 234 Mo. 331. (c) "Every distinct and material
allegation in the writ, if intended to be controverted, must be denied
and the traverse must be single, direct and certain. The rules of the
common law prevail with respect to pleadings under the Practice
Act remain unchanged." State ex rel. v. Williams, 96 Mo. 13. (d)
"Merely making a counter-statement or giving a different version of
the matter contained in the alternative writ is not specifically deny-
ing such allegations." State ex rel. v. Adams, 161 Mo. 364; Knapp
Sterd & Co. v. St. Louis, 156 Mo. 352. (e) "All undenied allegations
found in the alternative writ in mandamus stand as admitted. All
matters well pleaded by relator which are not denied by respondent
in express terms are admitted to be true." State ex rel. v. Riley,
219 Mo. 690. (f) "Every distinct and material allegation in the
writ, if intended to be controverted, must be denied; and the traverse
must be single, direct and certain." State ex rel. v. Williams, 96
Mo. 13; State ex rel. v. Tramel, 106 Mo. 515. (g) "In determining
the question before the court, it is the duty of the court to take into
consideration the undenied allegations of the alternative writ." State
ex rel. v. Riley, 219 Mo. 690. (h) "In the brief for respondent
there is some criticism of the form of the return, the argument be-
ing that it does not, with sufficient certainty, state facts to justify
the refusal to pay the relator's warrants. The rule of pleading in
such case is correctly stated by the learned counsel. A mere general
denial is not a sufficient traverse of the material allegations of the
writ. The denial must be direct and specific." State ex rel. v. Alli-
son, 155 Mo. 328; State ex rel. v. Broaddus, 234 Mo. 332. To state
in a return that "so far as respondent is informed and believes no
warrants have ever been drawn for presentation to him for his sig-
nature," is no answer to alternative writ. State ex. rel. v. Gilbert,

163 Mo. App. 683. It was further held that under the above stated denial that it "stands admitted that warrants had been prepared for the signature of the respondent." State ex rel. v. Gilbert, 163 Mo. App. 683. "Where an alternative writ of mandamus is broader than the law warrants it may be amended and a peremptory writ awarded for so much of the relief as is proper." State ex rel. v. Wurdeman, 183 Mo. App. 28; State ex rel. v. Baggott, 96 Mo. 63; State ex rel. v. Hudson, 226 Mo. 239-264; State ex rel. v. Barker, 254 Mo. 515. "All matters well pleaded by relator which are not denied by respondent in express terms are admitted to be true." State ex rel. v. Riley, 219 Mo. 667-690. (5) Appellants, respondents below, are estopped to deny that relator was granted a vacation of one week. Having granted relator one week's leave of absence, appellants are estopped to assert now that he was legislated out of office. Bales v. Perry, 51 Mo. 449; Delashmitt v. Tester, 261 Mo. 440. To permit him to deny that a week's vacation was granted amounts to a perpetration of a fraud upon relator. Rice v. Bunce, 49 Mo. 231. Estoppel is interposed to prevent injustice and to guard against fraud by denying to a person the right to repudiate his acts and admissions. 21 Corpus Juris, sec. 120, p. 1117; McFarland v. McFarland, 211 S. W. 23; Rice v. Bunce, 49 Mo. 231. Strait was induced to request a layoff when Fisk knew he, Fisk, did not intend to restore him to the service without fault of Strait, and this estops Fisk to say his position was abolished. Gentry v. Gentry, 122 Mo. 221; Keen v. McVoy, 206 Mo. 58; Garesche v. Leverme Inv. Co., 146 Mo. 436; Campbell v. Hoff, 129 Mo. 317; Gray v. Gary, 83 Mo. 106.

DAUES, P. J.—This is a mandamus suit begun in the circuit court of the city of St. Louis, in which relator seeks to compel the appellants, officers of the municipality of the city of St. Louis, to reinstate him to the position of clerk in the street department of said city and to compel the payment of his salary as such clerk since June 16, 1924. The lower court issued its alternative writ of mandamus; there was a final hearing, and a peremptory writ of mandamus was issued in which the officers of the city were directed to rescind their action in transferring another employee to the place theretofore filled by relator and commanded that relator be installed in that position as being the only person entitled under the charter and rules of the Efficiency Board to such position. The officers were further ordered to draw a warrant for relator's salary at $160 per month from June 16, 1924, to the date of certification. From this judgment the city officers, being respondents below, have appealed.

The relator being respondent here, and the respondents below being appellants here, to avoid confusion we will refer to respond-

ent here as relator, and to the appellants here as the respondents. This, we think, will lend a more willing understanding to our statement of the facts.

The case turns almost entirely upon a proper construction of the laws of the city of St. Louis, charter, ordinance and promulgated rules thereunder.   While the facts are in many respects strongly disputed, such disputed facts, as we understand the case, do not become of serious consequence, as is hereinafter pointed out.

Admittedly, relator began as an employee of the city on November 8, 1911, as a bookkeeper-clerk in the street department, more exactly named, the maintenance and cleaning section thereof, and in a branch office located on Clark avenue.   He continued at such work and was so engaged when the city adopted its present charter in 1914. The new charter provided for an Efficiency Board for the city and created a plan something akin to, though not exactly, a civil service system for employment in the different departments of the city. The new charter also provided in section 9, article 18, for transferring old employees to the new system of municipal government, specifying that the old employees should continue in their present positions, subject to the charter and ordinances, until their discharge, reduction, transfer or promotion.   Relator, then in the employ of the street department, was carried over in the same position under the new charter.

In 1918 a classification ordinance for this department was adopted, being ordinance No. 30193.   This ordinance organized the officers and employees in the department of streets and sewers in conformity with the powers given in the charter and making the positions suitable to the new conditions created under the new charter.   This ordinance designated the number of employees in the department, fixed their compensation and repealed all ordinances then existing which were in conflict or inconsistent with the new ordinance.   Relator, being particularly in the maintenance and cleaning section of the department, was directly affected by section 21 of said ordinance, which fixed the clerical schedule for that section as one clerk (CC II), four clerks (CC I), one stenographer-clerk (Cst C I), one bookkeeper (CB II).   Section 22 of the ordinance provided for a sewer record and permit section, the clerical schedule thereof consisting of one clerk (CC III), one clerk (CC II); sub-professional schedule, six draftsmen (S-PD I).

On December 1, 1922, a new superintendent over this section was appointed, and under his direction the clerical system in this section was changed, and it is in evidence that the head of the department did not deem relator competent to keep these records.   Thereupon the newly-appointed superintendent, Ernest Paffrath, installed another employee in charge of the records of that section and this

relator was made an assistant, retaining his classification as clerk grade II, under which classification he had theretofore been graded. An examination of the fiscal affairs of the city was then being made to promote efficiency and reduce public expenditures. Pursuant to that, the Efficiency Board, being charged with the classification of the employees of the city, made a survey of the personnel, duties and salaries in this section of the street department. This was in November, 1923. The Efficiency Board, through its chief examiner, concluded that the clerical force in that section could be reduced to one grade III (CC III) clerk and a stenographer, and this conclusion was duly adopted by the Efficiency Board. About this time Paffrath, the superintendent, under orders from the head of the department, assigned relator to the permit section of the street and sewer department in the City Hall proper, such section not being located at the Clark avenue office. Relator remained there as grade clerk II (CC II) until June 16, 1924, the date when ordinance No. 33151, the reorganization ordinance which repealed ordinance No. 30193, went into effect. This latter ordinance was a comprehensive ordinance completely reorganizing the department. This new ordinance, repealing everything ahead of it inconsistent therewith, provided in section 21 that the maintenance and cleaning section could have one clerk CC III and one stenographer-clerk C St C I. This was for the clerical schedule. In section 22 of such new ordinance relating to the sewer record and permit section, one clerk CC III was provided as the clerical schedule, and for the sub-professional schedule one draftsman S-PD III and one draftsman S-PD II.

It is important to keep in mind that ordinance No. 33151 went into effect on June 16, 1924. In this ordinance no provision is made for the employment of a grade II clerk in either the maintenance and cleaning section or in the permit section of the street and sewer department, and no ordinance was left alive which made such provision. So, then, so far as the relator's position was then designated by ordinance, that position went out. The head of the street and sewer department transmitted to the Efficiency Board a card, in conformity with the rules of the Board, in which the Efficiency Board was notified that relator's employment had been terminated, giving the reason that such position theretofore held by relator had been abolished by ordinance No. 33151.

It is asserted by relator, and it is admitted by respondents, that relator was not given any formal notice in writing of a dismissal. However, it is quite apparent that relator was always fully aware that ordinance No. 33151 was being considered; that it had passed, and that his position, by its original designation at least, was abolished. This is shown by the evidence that relator and his political and personal friends repeatedly called upon the head of the depart-

ment for the purpose of securing some other employment in the city for him. Of course, the ordinance went through the usual processes which imparted such notice. It is in evidence, too, that the head of the department promised relator to find a place for him when a suitable place could be found. At that time, so far as we can tell from this record, relator made no claim that he was still an employee of the city; he made no demand for his salary as such, until after a year had transpired and until a year had transpired after grade CC II clerk had been abolished by ordinance No. 33151. Relator also immediately after ordinance 33151 became effective, went to the chairman of the Efficiency Board about the situation, and there received the information that his only remedy would be to make an application to the Efficiency Board to be put on the reinstatement list so that he could be appointed when the occasion arose in case of a vacancy. This relator did not do.

It is relator's position, as we understand it, that he was an employee of the city when the charter became effective, and that therefore, notwithstanding the ordinance abolishing his position by name, he could not be ousted out of his employment except for cause, and to support this and the same point made in many ways, relator adduced much evidence by which it was attempted to show that relator was ousted from his position by trickery in having a new ordinance passed abolishing his designated employment; that the real reason for the removal of relator was to give another and a favored employee his place. And it is also insisted that relator was never properly discharged as authorized by the city law, and that he was not given a two weeks' notice of his discharge, which relator contends he was entitled to.

As we have already indicated, the case really turns upon a proper interpretation of the charter and ordinance of the city, and most of the record is beside the case. Relator in his brief concedes that if he was *properly* legislated out of his position by ordinance No. 33151, which became effective June 16, 1924, then this judgment must be reversed. But it is urged that the facts in this case do not admit of that rule, because there is no testimony in the case justifying an application of the rule. Relator's testimony is quoted to the effect that on January 1, 1912, when he was employed under the old charter, the superintendent of that section of the street department announced to him in the presence of other employees that the (relator) would be "the chief clerk of that office," and the evidence shows that relator was in that position up to November 23, 1923, when he was temporarily transferred to the permit section of the sewer division, and that clerkship CC 2 was the highest office and paid the highest salary in the maintenance and cleaning section of the sewer department; that he was never transferred to the sewer section but simply asked

to go down to the City Hall from the Clark avenue office, and that he was maintained on the Clark avenue office pay roll until June 16, 1924; that the duties of the two offices, CC 3 and CC 2 are comparatively the same. And from this evidence relator's counsel argues that the position here involved was that of "chief clerk," and that this was the same position held by him during his entire service and that it does not matter that it bore the denomination CC 2 or CC 3 afterwards; that he was in fact chief clerk at all times.

The further argument is made that relator was superceded by an employee named Ford, who entered the City employ November 10, 1911, as a laborer at $2 per day, and it is insisted that relator was relieved of his employment in order to make a place for Ford, who was not as fit as relator but who received the place because of favoritism.

At the outset of the case counter propositions were advanced as to defects in the proceeding. Respondents say the peremptory writ does not conform to the alternative writ and that therefore the peremptory writ is fatally defective. We have examined this point and rule against it. Relator, on the other hand, insists that the return filed by respondents below is not sufficient since it does not contain a specific denial of certain allegations of the writ. However, affirmative allegations in the return are sufficient to cure any fault in the return because of a failure to make a specific denial. But whether that is so or not, relator proceeded upon the theory that all the allegations of the writ had been traversed, and we will not now, the question (so far as the record shows), being raised for the first time, hold the return insufficient. [State ex rel. v. Trammel, 106 Mo. 510, 17 S. W. 500.]

The city of St. Louis does not have a strictly civil service system. Civil service, as generally understood, is established not only to create efficiency in public service, but where such system is in vogue it protects, with conditions, employees in their position during good behavior. The charter nowhere uses the term "civil service," but establishes a department which is called "The Efficiency Board." Employees are divided into two classes, that is to say "classified service" and "unclassified service," and an appointment under the merit system in the classified service is to be made by the head of departments from an eligible list furnished by the Efficiency Board. However, the charter specifically provides, and about which there can be no mistake, in sections 7 and 12 of article 18, that the power of removal, even in the classified service, rests in the appointing officer, and such appointing officer may exercise such power "with or without cause except as in this charter is otherwise provided." The charter makes an exception in section 12 of said article, which is an inhibition against an officer discharging an employee or discrimi-

nating against him for political or religious affiliations. So, therefore, there is nothing in either the charter or the ordinances which would prevent the superintendent under which this relator worked for the city after the charter went into effect in 1914 from discharging him *with or without cause*. Whether such provision of the charter is wise or unwise is not for us to discuss.

Now it is a certainty from this record that relator on June 16, 1924, had his employment severed from the city. He was not permitted to work there; his pay was stopped and another man was given his work. According to respondents, the position was abolished. If the position was abolished, this judgment is erroneous; if relator was discharged, it likewise cannot stand unless ordinance No. 28287, which provides that no employee shall be discharged without having been given fifteen days' notice, is to be held valid as not being inconsistent with the charter which gives the appointing officer the right to discharge with or without cause except for reason of religion or political affiliations of the employee. We need not determine this question on this appeal.

Relator says that since he was in this employment before the new charter took effect, he could not be removed under the new charter except for cause. This is based upon section 9 of article 18 of the charter, which provides that all persons in the city service holding positions in the classified service at the time the charter takes effect shall be entitled to retain their positions until discharged, transferred, etc., in accordance with the provisions of the charter. This section of the charter simply means no more than that persons in the city employ at the time the old charter was extinguished shall be placed and remain in exactly the same position under the new charter and to abide of course by whatever provisions may be made thereafter by ordinance for such position; they shall remain in the service of the city under the new charter under the same terms as those who are later inducted into their positions under the regulations of the Efficiency Board, and of course shall in like manner be subject to removal, discharge, etc. It certainly cannot mean, as contended for by relator, that an employee under the old charter when the new charter is effected has a vested right in such position or is in any different position from any new employee under the new charter. Therefore we have no difficulty in determining that the new charter and the ordinances thereunder apply exactly to this relator as to anyone else appointed since the new city government became effective.

Now, was he legislated out of his position, or was he discharged? Without needlessly going over the history of the city legislation again but to clarify, relator was in the maintenance and cleaning section of the department of streets and sewers as clerk grade 2, designated CC II. The ordinance under which he held this position was ordi-

nance No. 30191, drawn in 1918. This ordinance authorized the department head to make this employment and fixed the salaries of this and other employees in that department. In November, 1923, relator was sent over to the City Hall in the permit section. Subsequently, ordinance No. 33151 was passed and became effective June 16, 1924. This was a repealing ordinance, repealing ordinance No. 30191. Under the old ordinance under the new charter, then, the employment was regular as clerk CC II. The new ordinance omitted this service entirely and made no provision for clerk CC II in either the maintenance and cleaning section or in the permit section of the department of streets and sewers. It reduced the number of employees; others were selected to fill these newly-designated positions under the last ordinance, and this left relator a clerk CC II without any employment, and accordingly he was legislated out of his position, as we understand it.

There are many cases which hold that an employee of a municipal corporation has no vested right in his employment. The municipality may abolish it altogether or change the duties, term or tenure of it without violating any right of the employee, and this may be done by ordinance if it does not contravene the organic law, or, as under the St. Louis charter powers, also does not contravene the State Constitution or statute law. [Primm v. Carondelet, 23 Mo. 22; Magner v. St. Louis, 179 Mo. 495, 78 S. W. 782; State ex rel. v. Davis, 44 Mo. 129; Wilcox v. Rodman, 46 Mo. 322; Gregory v. Kansas City, 244 Mo. 523, 149 S. W. 466.] The repeal of an ordinance creating an office or position abrogates it absolutely unless perpetuated by some other provision. [Gregory v. Kansas City, supra; Bennett v. Longview, 268 S. W. 786, l. c. 788.]

Nowhere does the charter confer upon relator the right to maintain his position as clerk grade 2 (CC II) until discharged for cause. We must take judicial notice of the charter of the city of St. Louis which is the organic law of the city. This is so under the State Constitution, article 9, section 21. [See City of St. Louis v. Lang, 131 Mo. 412, 33 S. W. 54.]

Now, as to the motive and intent of the Board of Aldermen in passing this new ordinance and abolishing an office or employment, same cannot be inquired into by the courts. If the ordinance was authorized by the charter and the aldermen acted within their limits of discretion under the law, the courts will not review its proceeding. This is the law generally throughout the States. We are of the opinion, in view of the charter and ordinances of the city above referred to, that the employment of this relator was abolished on June 16, 1924, and that such employment ceased at that time and no further rights to compel reinstatement or right to salary was left to the relator under the theory of his petition. The fact that another man was

placed in his position, or that the abolition of the position was for the sole purpose of making room for someone else does not vitiate the action of the city in passing the new or reorganization ordinance. That portion of relator's brief which proceeds upon the theory that there are really two claimants to this employment, relator himself and Ford who was given this appointment, need not be discussed, for the right to a municipal office or employment as between two claimants cannot be determined by mandamus. [St. Louis v. Sparks, 10 Mo. 117.]

The very recent case of State ex rel. Kansas City v. Coon, No. 27366, has been submitted to us on manuscript. This is a case in the Supreme Court of our State in Banc. Since a motion for rehearing in that case has been sustained, we cannot refer to it as authoritative. A companion case, by same style, No. 27367, has been finally determined by that court and we have resorted to that opinion for light. That case decides, among other questions, that under the Kansas City charter a notice of discharge is a prerequisite to discharge, and that the payment of salary to the *de facto* officer, if pleaded, is a defense of the claim of the *de jure* officer when reinstated, and further involves the application of the remedy of prohibition in such cases. None of these questions are before us.

We have confidently reached the conclusion that it was within the power of the city to reorganize the department employees and their duties. In fact, ordinance No. 33151 changed the duties as well as the salaries and the symbolical designations of the positions involved, and so relator was duly legislated out of his employment and he has no right to the claim made in this proceeding. This being our view, the judgment of the lower court should be reversed outright. It is so ordered. *Becker* and *Nipper, JJ.*, concur.