GARRARD CHESTNUT, Respondent, v. KANSAS CITY, Appellant.

Kansas City Court of Appeals, June 2, 1913.

1. MUNICIPAL CORPORATIONS: Street Commissioner: Discharge: Civil Service. The charter of Kansas City does not give a fixed and definite term to the position of district superintendent of streets, and, subject to the provisions of the charter in relation to civil service, he may be discharged by the street commissioner at any time.

2. ————: ————: District Superintendent: Salary: Service. A district superintendent of streets was verbally appointed by the street commissioner of Kansas City for and during a certain mayoralty administration, his salary being at the rate of $1000 a year. He was suspended for want of funds, for a period of six weeks, during which time the city refused to pay him. It was *held* that he had no cause of action against the city.

Appeal from Jackson Circuit Court.—*Hon. W. O. Thomas*, Judge.

REVERSED.

*A. F. Evans, J. W. Garner* and *A. F. Smith* for appellant.

(1) In the absence of any limitation fixed by statute, an appointing officer may remove his appointees

at pleasure. Throop, Public Officers, secs. 354, 361; 2 McQuillin, Mun. Corp., sec. 558; State ex rel. Kane v. Johnson, 123 Mo. 43, 50. Plaintiff's appointing officer having the power to finally remove plaintiff at pleasure, he had the power to temporarily remove him, especially when there were not sufficient funds to keep him in service. (2) Even when the law forbids the removal of officers or employees except for cause and after a trial, that law does not apply when the removal is made for economical reasons. State ex rel. v. Edwards, 40 Mont. 287, 106 Pac., 695, 699; Donaghy v. Macey, 176 Mass. 178, 45 N. E. 87; Leftbridge v. Mayor, 133 N. Y. 236, 30 N. E. 975; Fitzsimmons v. O'Neill, 214 Ill. 494, 73 N. E. 797; Kansas City Charter, sec. 10, art. 15.

*R. J. Holmden* for respondent.

ELLISON, J.—This is an action for balance claimed to be due plaintiff as his compensation for service in the capacity of district superintendent of streets in Kansas City, Missouri, He recovered judgment in the trial court and the city appealed.

The charter of Kansas City (Secs. 12 and 13, Art. 10, Charter 1909) provides that the board of public works shall appoint a "commissioner of street cleaning" for Kansas City, who shall have general control, charge and direction of street cleaning. He has authority to appoint, among other positions, such number of "district superintendents," as well as "foremen, employees and laborers, as may be provided by ordinance."

The charter (Sec. 27, Art. 4, Charter 1909) also provides that the board of public works with the concurrence of the common council shall "fix a general schedule of the number, grade and compensation of all agents and employees in the department under its

control.'' In accordance with this authority the board of public works did fix a schedule for the street department, consisting among others of a street commissioner and five district superintendents, the former at a compensation of three thousand dollars per year and the latter at a compensation of one thousand dollars per year.

In the years 1908 and 1909, Thomas Pendergast was street commissioner and he appointed this plaintiff one of the district superintendents as above authorized—the employment beginning in May, 1909, and finally ceasing in May, 1910, a new administration having been elected. For two weeks in each of the months of November and December, 1909, and February, 1910, the commissioner suspended plaintiff, or, as expressed by plaintiff himself, ''laid him off,'' for want of sufficient funds for the use of the department.

Plaintiff's appointment seems to have been verbal, and it was conceded at the trial that there was no record of it; the only record connected with the matter being entries of semi-monthly payments to him for services performed. No oath, bond, or written appointment appear in the case.

The case seems to turn on the power of Pendergast to discharge plaintiff. Authority cannot be found in either the charter or the ordinances fixing a term to the employment of a street district superintendent. It is our opinion that the charter does not contemplate a fixed and definite term of office for a district street superintendent, and that he may be discharged from such employment at the discretion of the commissioner, just as an ordinary employee. [2 McQuillin Mun. Corp., sec. 558; Throop Public Officers, secs. 354, 361; State ex rel. v. Johnson, 123 Mo. 43; Robertson, v. Coughlin, 196 Mass. 539.] In the schedule of places which the board of public works is required to make out, with the compensation attached, we find in the resolution of the board, approved by the council, a long

list of employees and agents, with compensation in figures carried out opposite each, and these figures are under a heading, at the beginning, of "salary per year," district superintendents having $1000 opposite that place. But this only signifies that he is to be paid at that rate and so he was given semi-monthly warrants. It does not have the effect of making for him a definite term.

We find in plaintiff's brief some suggestions which we think are not borne out by the evidence. The evidence shows that plaintiff was discharged at the three several times for the reason that there was "no work" and that "they were short of funds." There is no evidence, properly considered, that justifies the idea that plaintiff had a right to remain in the service of the city during the period of these discharges. The meaning of the evidence is that when he was wanted, or if he was wanted again, he would be called, or notified. Again, we think plaintiff's testimony shows he did not consider he had a fixed term. His attorney asked him this question: "Were you appointed for any length of time?" And he answered in these words: "Just during the Crittenden administration, one year." At the time of his employment, the Crittenden administration would terminate more than a month short of a year.

The present charter of Kansas City contains an article on civil service (Art. 15, Charter 1909) whereby most of the positions under the city government, including that plaintiff occupied, are placed in what is designated as the "competitive class." By the terms of section 10 of that article, the heads of the several departments have the power of removal, but there are protective restrictions and rights which may be asserted by the subordinate if he chooses. It is said that civil service commissioners had not taken necessary action for the enforcement of the civil service provisions at the time of the origin of this controversy.

However that may be, the case was not tried under the provisions of that law, and we therefore have no occasion to interpret it.

In our view plaintiff has no cause of action against the city and the judgment will therefore be reversed. All concur.