Sidney L. WILLENS, Appellant,

v.

The PERSONNEL BOARD OF KANSAS CITY, and L. P. Cookingham, City Manager of Kansas City, Missouri, Respondents.

No. 22189.

Kansas City Court of Appeals.

Missouri.

April 4, 1955.

666

Charno & Charno, Kansas City, for appellant.

David M. Proctor, City Counselor, and James M. Coonce, Asst. City Counselor, Kansas City, for respondents.

CAVE, Presiding Judge.

This is an appeal from a judgment of the Circuit Court of Jackson County affirming the order of the Personnel Board which sustained the discharge of the appellant as a Senior Liquor Investigator of the Department of Liquor Control of Kansas City.

Hereafter, the Personnel Board will be referred to as the "board", and L. P. Cookingham as "city manager".

On January 9, 1953, Fred R. Johnson, Director of Liquor Control (hereafter referred to as "director"), and appellant's superior officer, discharged him for "re-

fusal to follow instructions". Thereafter, appellant filed a petition with the board requesting a review of the order of the director, as provided by Section 125, Article V, city charter. An extended hearing was held before the board, at the conclusion of which it made its findings and entered an order, the material part of which is: "(3) the board finds that the employee (complainant) was discharged for failure to follow instructions. * * * We believe that the respondent (director Johnson) was justified in discharging the complainant and we hereby sustain the respondent's action in so doing." Appellant then requested a review of the decision of the board by the city manager, as provided by Section 125, supra, who ordered that a complete transcript of the hearing before the board be filed with him. After an examination thereof, the city manager sustained the order of the board. Whereupon, appellant filed in the circuit court a petition for review of the action of the board and of the city manager, as provided by Chapter 536, RS1949, V.A.M.S. Answers were filed and the court, after reviewing the whole record, affirmed the order of the board and the city manager. Motion for new trial was overruled and appeal was perfected.

Appellant contends: (1) that he was unlawfully discharged; (2) that the record does not support the charge that he refused to follow instructions; (3) that his discharge was arbitrary and capricious and an abuse of discretion on the part of the administrative officers concerned; and (4) that he is entitled to a finding and order of reinstatement to his employment, and by reason of such unlawful discharge, to restoration of his salary since the date of discharge.

The record discloses that the director had employed appellant as a Senior Liquor Investigator about eighteen months prior to the time of his discharge. His services had been entirely satisfactory to the director, who had given him additional and more responsible duties in the department. The basic cause of the discharge concerns a feature article, prepared by appellant, on the history of the liquor laws of the city and the enforcement thereof. It had the following "by-line" or heading, "By Sidney L. Willens—Senior Investigator-Attorney for the Department of Liquor Control", and was to be published in the Kansas City Star. We are not called upon to discuss or decide the merits of the article, and will not refer to it in detail.

Several weeks before the article was published, appellant exhibited a "rough draft" to the director, who suggested certain changes. Thereafter, the final article was prepared and shown the director, who stated that he "liked the article". About that time the appellant advised the director that he had been in communication with Mr. Garnett, Sunday Editor of the Kansas City Star, who had approved the article and intended to publish it the following Sunday. Upon receiving this information, the director testified: "I immediately asked him (Willens) for a copy of the finished draft and advised him that I would have to send it upstairs to Mr. Cookingham for approval". Securing the approval of the city manager before an article is published over the name of a city employee is and has been the policy of the city government for a number of years, and had been stressed by the city manager at many meetings of the heads of the various departments. It does not appear that appellant had actual knowledge of this policy at the time he prepared the controversial article. However, he did receive such information before his final discharge.

The copy of the article was sent to the city manager's office January 5, 1953. On January 6, Mr. Backstrom, assistant city manager, sent it to the city manager with this notation: "The attached 'History of Liquor Law' prepared by Willens for K. C. Star for *next Sunday*. Because of the different approach and 'light touch' I thought you should look over. The 'History' appears accurate". The city manager examined the article and returned it to Backstrom with this notation: "Tone too light and frivolous—This is too serious for such treatment. Have rewritten and resubmitted or let newspaper reporter write story". Backstrom advised the director that the ar-

ticle "would have to be rewritten before it could be approved". The director went to Backstrom's office and they discussed the article. Later that day, Thursday, January 8th, appellant went to see Backstrom and they discussed the situation. The appellant "was disturbed about the fact that the city manager had failed to approve the article as written, and he wanted to know if there was anything that could be done about it. I discussed the matter with him, and I think I explained to him the reasons why the city manager had refused to approve it the way it was written, * * * he explained to me that there was some artist's sketches in connection with it, and I told him that if he could get a copy of it, * * * I would take a look at it. He explained to me that he didn't think the article would be too bad after it was set up in type". They discussed the possibility of getting the Star to withhold publication for another week to see whether the article could be rewritten and if that could not be done, appellant was to get a printed copy of the article and return to Mr. Backstrom's office. Friday morning appellant returned and informed Backstrom that the Star would not give him a printed copy, and asked if he might talk with the city manager about the situation. The three of them discussed the article, and Cookingham told appellant that the article was "in too light of a vein"; that liquor control was a serious business and he thought the article should be rewritten, "or else take his (Willens') name off the article. Q. What did Mr. Willens say to those suggestions? A. Well, he argued for the article. He thought it was all right, there wasn't anything wrong with it, and then Mr. Cookingham * * * called his attention to the fact that Willens had described himself as a senior investigator-attorney for the liquor department which wasn't the proper classification name for his job, * * *. Willens said that he thought that was his title, that he was an attorney and that he was a senior investigator, and he thought that was the proper title, but Cookingham told him that his title was senior investigator and he had no business using the word 'attorney' in connection with that classifica-

tion. * * * Mr. Willens kept talking about this article that was going to be published Sunday, and Mr. Cookingham told him that if he wanted it published to take his name off the article. * * * Mr. Cookingham left Willens and I * * * and went back to his office, and Mr. Willens asked my opinion as to what he should do about it, and I told him if he wanted that published he better take his name off the article. * * * He left."

Appellant returned to the director's office and they had a lengthy discussion about the matter. The director testified that "the essence of what he said, as I understood it, that since this article was a feature article and it did not contain any information that anyone might not have, that he did not believe that anyone had the right to deny that privilege of publishing it as it was. We discussed it thereafter, and I said something like this to him, 'whatever the merits or demerits of that may be, if the article is published as it is under the signature of Mr. Willens without the approval of the city manager or, I mean, the office of the city manager, I would have no recourse but to discharge him, since I think I had been advised at that point that there was an alternative of rewriting or deleting the name'. * * * I think he said, to the best of my memory, that he thought the procedure was unfair." Later that afternoon appellant returned to the director's office and they again discussed the article. "I think he said it was simply unfair and a matter of principle with him, and he wasn't willing to do that without maybe he had more adequate reasons, * * *. I said 'I have already made my statement what the position is, and you know what it is to be done'. 'Well', he said, 'I am not willing to consent to that', or words to that effect, 'to make any changes at that late date'. I said, 'Mr. Willens or Sidney, if that is the way you want it, you understand you will have to be fired.' 'Well,' he said, 'I think that is the way I want it'. I believe he used the words 'matter of principle', so at that point, I discharged him. I said, 'All right then, I have no choice but to discharge you.'" Concerning this conversation the appellant tes-

tified, "I told him (director) I thought that Mr. Cookingham was certainly unjust in the matter and I didn't see how I could go along with it, because it was a matter of principle to me now. * * * At that time I thought my name had been taken off. As I told Mr. Johnson, 'Mr. Cookingham evidently is taking care of this matter. He has called Mr. Garnett'. I said, 'If it's up to me, I doubt whether I could go along with it. * * *' I don't think I would have actually gone down to the Star and told them to take my name off. I would have left the chips fall as they may."

Mr. Cookingham testified that he disapproved the article because he thought it was too light and trivial and that it should not appear over the by-line of a city employee; that the question of liquor regulations and enforcement is a very controversial subject, and if it is discussed at all, it should be in a serious vein; that he and the appellant had a rather heated discussion concerning the article and the question of appellant practicing law; that he told appellant that if the article could not be rewritten, then it should not be published with the name of the appellant as author, but that he would have no objection to it if it was under the name of some newspaper reporter; that he called Mr. Garnett of the Star and told him that the article should not come out over the signature of a city employee, and that Mr. Garnett promised to remove the by-line. The record is not quite clear, but apparently this information was not immediately communicated to the director or the appellant, but it is clear from the whole record that the director and appellant understood that the article, as written, did not meet the approval of the city manager if it was to be published in the name of the appellant. On Saturday morning, after he had been discharged, appellant went to the office of the Star and informed them of his discharge, and the article was finally published with this by-line: "The author is a former investigator-attorney for the Kansas City Department of Liquor Control. By Sidney L. Willens."

We have quoted above the statement made by the appellant to the director after his conversation with the city manager, which clearly discloses his attitude concerning the position taken by the city manager. In addition, appellant testified concerning his educational background; his interest and experience in journalism; that he prepared the controversial article on his own initiative and submitted it to the director, who seemed to like it; that he had no knowledge of the policy of the city government requiring submission for approval of articles prepared by a city employee; and that he was the one who suggested that the director send the article to the office of the city manager. The purpose he had in mind in sending it to the city manager's office is stated as follows: "After we realized it was going to be published, we sort of figured that if it must be good enough to be published, we ought to send it up to the city manager, maybe it would be a feather in my cap. If it weren't a feather in my cap, it would be for the office, and I thought it was sort of a mutual suggestion. I actually feel that I suggested that it go up there, because I said, 'It would help you (director) out with me. You wouldn't have to keep defending me. Maybe they would think I am doing a job down here.' * * * I told him, 'Let's send it up'. * * * As a matter of courtesy, we sent it up for two reasons. One, because of the fact that we thought actually it would be a feather in my cap and would help Mr. Johnson with me who wanted me to stay on the job, and number two, we thought that here it would appear Sunday and the city manager would open up the newspaper and would say, 'What's going on in my department?'" Concerning his conversation with Mr. Backstrom after the city manager left the conference, he testified: "I said (to Backstrom), 'What would you do in this case?' He said, 'Well, you better take your name off', and I said, 'Well, it sure burns me.'" He stated that at the time he was discharged he thought his name had been removed from the article.

There was considerable evidence concerning appellant practicing law while employed by the city, and also about the city auditor's office investigating his work.

However, we need not detail such evidence because he was not discharged for such matters.

■ The scope of review, by a court, of the decision of an administrative tribunal has been discussed and defined in many decisions. A brief statement of this rule is found in Wood v. Wagner Electric Corporation, 355 Mo. 670, 197 S.W.2d 647, 649, where the court said: "The provision in Section 22 [Article V, Const.1945] that administrative decisions 'shall be subject to direct review by the courts as provided by law' refers to the method of review to be provided (certiorari, appeal, etc.) and not to the scope of the review 'in cases in which a hearing is required by law.' For the latter, this stated minimum standard ('supported by competent and substantial evidence upon the whole record') is mandatory and requires no legislation to put it into effect. This does not mean that the reviewing court may substitute its own judgment on the evidence for that of the administrative tribunal. But it does authorize it to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all of the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence."

Several cases are cited in the briefs on this general proposition, but none of them is in conflict with the above quoted principle. It is sometimes dressed in different verbiage, but the meaning and effect of the language used is the same. Consequently, the question for our decision is whether the board could have reasonably made its findings, and reached its result, upon consideration of all the evidence before it, or whether its decision was clearly contrary to the overwhelming weight of the evidence.

Relative to appellant's first contention, that he was *unlawfully discharged*, the city has provided, by ordinance, definite authority and procedure in such matters.

Section 91 of the Administrative Code reads: "All appointees and employees in the city's service  *  *  *  shall be deemed to be appointed or employed at will, and may be removed or discharged at discretion, without notice, by the discharging authorities designated in the charter subject, however, to the rights of such employees under Section 125 of the charter.  *  *  *  The provisions of this section shall be held and construed to be a condition of all appointments and employments in the municipal service."

■ Appellant was an "appointee" of the director who, under this section, could discharge him at his discretion without notice. Appellant concedes this to be true because in his brief he states: "In the instant case, the Director was appellant's appointing and discharging authority. The Director had sole control and sole authority to determine whether or not the discharge of appellant should be made,  *  *  *". However, he argues that the director abused his discretion and acted arbitrarily and capriciously in discharging him, and that the board and city manager erred in not so finding.

■ The general rule, relative to discharge of city employees, is fully discussed in Sections 12.112, 12.115, 12.249 and 12.250, Volumes 3 and 4 of McQuillin Municipal Corporations, Third Edition. The rule is stated thus in Section 12.249: "Unless the law otherwise provides, if the officer is appointed or elected, as by a council or board, and no definite term is prescribed, he holds at the will or pleasure of his superior or the appointing or electing authority; hence, the power of removal may be exercised at any time by such agency. In such case the power of removal is regarded as incident to the power of appointment or election." See also Chestnut v. Kansas City, 171 Mo.App. 327, 157 S.W. 656; State ex rel. Kane v. Johnson, 123 Mo. 43, 49, 27 S.W. 399; Magner v. St. Louis, 179 Mo. 495, 78 S.W. 782; State ex rel. Strait v. Brooks, 220 Mo.App. 708, 293 S.W. 471.

So far as the record in this case discloses, the only apparent limitation, if it may be called such, upon the authority of the director to discharge the appellant is

found in Section 125 of the Charter. It provides that when an employee is discharged or reduced in rank he may have a hearing before a Personnel Board, and if the board's finding is adverse, he may appeal to the city manager who may affirm, modify or reverse the decision of the board. This section also provides that, "if the board decides by the *greater weight of the evidence* that the officer or employee was *wrongfully discharged* or reduced in rank or suspended, then the board may reinstate such officer or employee in his former position, or if consented to by the appointing authority for some other vacant position, may direct the appointment of such officer or employee to such other vacant position in the classified service of the same or equivalent class or grade as his previous *position, * * *.*" (Italics supplied.)

This section limits the field of inquiry by the board to a determination, from the *greater weight* of the evidence, whether the employee was "wrongfully discharged". The word "wrongfully" is given many interpretations and meanings according to its context. See Volume 45, Words and Phrases, page 623, et seq. Black's Law Dictionary, Third Edition, defines "wrongful" as implying "the infringement of some right, and may result from disobedience to lawful authority". The word "wrongfully" is defined as an act done "in a wrong manner; unjustly; in a manner contrary to the moral law or to justice".

The parties concede they have found no case specifically construing Sections 91 and 125. There are cases cited discussing statutes or ordinances concerning the discharge of an official or appointee "for good cause" or for specific causes set out in a statute or an ordinance; or arising under civil service authority, but such cases are not determinative of the issue before us. The ordinance under consideration has no such limitations.

■ We do not believe the words "wrongful discharge" relate to the mere naked legal right of the appellant to remain as an employee because, under authorities cited supra, his term of office was at will

and he had no vested right to retain the same. Consequently, the "wrongful discharge" must be based on some ground other than appellant's legal right to the office. He recognizes this fact because, as stated supra, he ably argues that the director abused his "discretion" and that the board and the city manager erred in not so holding. This argument is based on the proposition that there was not sufficient competent and substantial evidence to support the discharge, or the order of the board and city manager affirming the same.

Without restating the evidence, we think it reasonably supports the conclusion that at the time of the discharge and immediately prior thereto, there was a rather heated discussion and conflict of views between the appellant, the director and the city manager, concerning the propriety of publishing the article as written and under the by-line of the appellant. He may not have known, in detail, of the policy of the city administration concerning the publication of articles by employees, but he did know that his superior officers did not approve of the publication of the article under the name of an employee and he made it quite clear that he did not agree with that position, and did not consent to have his name removed.

■ Section 19 of the city code authorizes the city manager to prescribe such rules and regulations as he may deem necessary or expedient, not inconsistent with the charter or ordinances of the city, for the general conduct of the city's affairs under his administration. Pursuant to this authority, he had adopted a policy heretofore referred to concerning the publication of articles in the name of a city employee. It is not within our province to pass judgment on the wisdom of the board authority given the head of a department by Section 91 for discharge of appointees; or of the policy adopted by the city manager as authorized by Section 19. Such questions are within the province of the legislative branch of the city government and when so adopted, an employee accepts the appointment on the terms offered by the ordinance and authorized regulations.

In view of the authority lodged in the director and the board, and under all the facts and circumstances appearing in this record, we cannot say that it clearly appears that the director abused his discretion in discharging appellant or that the order of the board is not supported by competent and substantial evidence.

Appellant also contends that the board erred in admitting in evidence respondents' Exhibit 6, which is an administrative regulation concerning the submission to the city manager of copies of radio script, manuscripts for speeches, and articles to be published. It appears that this typewritten regulation, in final form, was not reduced to writing until about the time or possibly immediately after appellant was discharged. At the time the exhibit was offered and objected to by appellant, the chairman of the board stated: "The exhibit will not be received for the purpose of attempting to show that Mr. Willens had any knowledge of this written regulation, but based upon the witness' (city manager's) testimony that this written regulation, * * * represents an oral policy previously in existence, and this merely reduced it to writing, and for that purpose only, it will be received." The city manager testified at length relative to the policy which had been discussed with the heads of the various departments long prior to the time in controversy and that Exhibit 6 was a final compilation of such policy. Under such circumstances, and in view of the limited purpose for which it was admitted, we do not believe appellant's rights were prejudicially affected.

We have examined the authorities cited by appellant, and conclude they are not controlling because of the differences in the statute or ordinance applicable to the issues presented. The opinion need not be extended to discuss and distinguish each authority, but illustrative of the line of demarcation is the cited case of State ex rel. Lindsay v. Kansas City, Mo.App., 20 S.W.2d 1. The opinion in that case was quashed by the Supreme Court in State ex rel. Kansas City v. Trimble, 317 Mo. 1208, 298 S.W. 833. The reason for quashing the Court of Appeals' decision was that that opinion held the rights of a city employee under the then existing civil service provisions of the 1908 City Charter had not been repealed by the provisions of the new charter adopted in 1925. The instant discharge was under authority of the new charter and ordinances enacted implementing the same and we must dispose of the issues on that basis. For further discussion of this question, see State ex rel. Kansas City v. Trimble, 322 Mo. 360, 20 S.W.2d 17.

From what we have said, it follows that the judgment of the circuit court should be affirmed. It is so ordered.

All concur.